UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY,  <br><br>  Plaintiff,  <br><br> v.  <br><br> MATTHEW LABINE,  <br>  Defendant. | Civil No. 21-682 (JRT/JFD)  <br><br> **MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

---

C. Todd Koebele and Lindsey A. Streicher, **HAWS-KM, PA,** 30 East Seventh Street, Suite 3200, Saint Paul, MN 55101, for plaintiff.

David E. Camarotto, Kyle Stephen Willems, and Lauren Janochoski, **BASSFORD REMELE PA**, 100 South Fifth Street, Suite 1500, Minneapolis, MN 55402, for defendant.

This action arises out of an underlying case between Defendant Matthew LaBine and a terminated party, Anita Gerrard. Gerrard filed a civil lawsuit against LaBine in Minnesota state court (the "Underlying Action") alleging that LaBine assaulted and battered her, injected her with a syringe, and attempted to rape her. Plaintiff State Farm Fire and Casualty Company ("State Farm") insures LaBine under both a Homeowner's Policy and a Personal Liability Umbrella Policy ("PLUP"). Upon receipt of Gerrard's complaint, LaBine requested that State Farm defend and indemnify him in the Underlying Action. State Farm commenced this lawsuit seeking a declaratory judgment from the Court that it has no such duty under either policy. State Farm has now brought a Motion for Judgment on the Pleadings. Because a factual dispute remains as to whether State

Farm properly reserved its right to challenge coverage under the PLUP, the Court will deny State Farm's Motion as it pertains to the PLUP. The Court will, however, grant State Farm's Motion as it relates to the Homeowners Policy because no bodily injury arose out of an "occurrence" as defined in the policy and, therefore, State Farm has no duty to defend or indemnify LaBine under the Homeowners Policy in the Underlying Action.

## BACKGROUND

### I.  FACTUAL BACKGROUND

The issues in this lawsuit involve the question of whether State Farm has a duty to defend and indemnify LaBine in a civil lawsuit brought by a third-party in Minnesota state court.

In October 2020, Gerrard initiated a lawsuit against LaBine alleging that LaBine assaulted and drugged her in September 2019. (Compl., Ex. 1 ("Underlying Compl."), Mar. 30, 2021, Docket No. 1.)[1] Gerrard alleges that in September 2019 LaBine arrived at her home in Princeton, Minnesota. (Underlying Compl. ¶ 4.) Gerrard was acquainted with LaBine as he owned Aspen Exteriors, a construction company, and Gerrard's husband, daughter, and two sons worked for the company. (*Id.* ¶ 19.) LaBine indicated to Gerrard

---

[1] The Court notes that an Amended Complaint has been filed in the Underlying Action. (Labine's Ltr. Dist. J., May 27, 2022, Docket No. 68.) The Court has reviewed the Amended Complaint to confirm that the factual findings remain the same, as relevant to this action, they do. The Underlying Amended Complaint was filed after the parties submitted their briefs and heard oral argument on the issue. The Underlying Amended Complaint raises only one additional issue discussed by the parties in their subsequent letters to the Court and which is addressed below.

that he needed a ride to one of his residences, and Gerrard agreed to drive him. (*Id.* ¶ 6.) The two entered Gerrard's car, with Gerrard behind the steering wheel, and headed for LaBine's home in Isanti, Minnesota. (*Id.* ¶¶ 6–7.)

According to Gerrard, during the drive LaBine placed his hand on the steering wheel and shoved his phone, which was displaying pornographic photos, in Gerrard's face. (*Id.* ¶¶ 7–8.) He then allegedly made sexual comments to Gerrard, grabbed her arms, bit her above the right elbow, and simultaneously punctured her right arm with a needle, the contents of which are unknown. (*Id.* ¶¶ 9–10.)

Upon arrival at LaBine's home, Gerrard claims she got out of the truck and LaBine chased and grabbed her, claiming that he wanted them to get married and run off to Peru together. (*Id.* ¶¶ 15–17.) Gerrard told him she was not going to drive to the airport to go to Peru, and LaBine then allegedly bit her hand hard enough to draw blood. (*Id.* ¶ 20.)

After the incident, Gerrard claims that LaBine sent separate emails to her two daughters admitting that he had committed the acts and apologizing for doing so. (*Id.* ¶ 22.) He also apparently promised to pay her money for his actions. (*Id.*) LaBine then fired Gerrard's husband, daughter, and two sons from Aspen Exteriors. (*Id.* ¶ 23.)

To this Court's knowledge, no criminal charges were filed against LaBine. Gerrard filed a civil complaint against LaBine in Minnesota state court, which she later amended, alleging: (1) Assault and Battery; (2) Negligence; (3) Intentional Infliction of Emotional

Distress; (4) False Imprisonment; (5) Sexual Battery; and (6) Negligent Infliction of Emotional Distress.  (Labine's Ltr. Dist. J. at 7–11, May 27, 2022, Docket No. 68.)

Upon notice of the state court lawsuit, LaBine tendered the Underlying Complaint to State Farm seeking defense and indemnification under his Homeowner's Policy and the PLUP.  (Compl. ¶ 28)  Both the Homeowner's Policy and the PLUP provide coverage for occurrences that result in bodily injury or property loss.  (Compl., Exs. B–C.)  Additionally, the PLUP provides protection for personal injuries.  (Compl., Ex. C ("PLUP").)  The policies require that the bodily injury, property loss, or personal injury, arise out of an accident.  (PLUP at SF000201–02;[2] Ex. B ("Homeowner's Policy") at SF000031–32.)  The policies also include exclusions, which excuse State Farm from any coverage for bodily injury, property damage, or personal injury that is willful or malicious or arises out of sexual harassment, sexual molestation, or sexual misconduct.  (PLUP at SF000206–08; Homeowner's Policy at SF000053–55.)

A series of correspondences ensued between State Farm and LaBine.  On June 22, 2020, State Farm sent a letter to LaBine stating that it "specifically reserve[d its] right to deny defense or indemnity to you or anyone claiming defense or indemnity under your [PLUP]."  (Aff. of Lehoan Pham ("Pham Aff."), Ex. 1, Dec. 13, 2021, Docket No. 55.)[3]  On

---

[2] For ease, the Court will cite to the Bates number located at the bottom right corner of the exhibits.

[3] This letter is not specifically enumerated in the pleadings.  The Court may, however, consider certain documents which are outside of the pleadings if they "do not contradict the complaint."  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (cleaned up).  This letter does not contradict the Complaint and, therefore, the Court will consider it.

December 30, 2020, State Farm disclaimed coverage under the Homeowner's Policies for the claims asserted against LaBine.  (*Id.*, Ex. 3.)  Then, on January 18, 2021, State Farm sent a letter to LaBine stating that it had completed its coverage investigation under the PLUP and had determined that "a defense can be provided under that policy."  (Decl. of Lauren Janochoski, Ex. A, Nov. 29, 2021, Docket No. 51.)  Lastly, on February 11, 2021, State Farm sent a letter to LaBine reserving its rights to refuse to defend or indemnify LaBine under the PLUP.  (Pham Aff., Ex. 2.)

## II.     PROCEDURAL HISTORY

On March 10, 2021, State Farm initiated this lawsuit seeking a declaratory judgment from the Court that it has no duty to defend or indemnify LaBine in the Underlying Action.  (Compl.)  LaBine answered the Complaint and filed his own counterclaims on May 25, 2021.  (Answer Compl., Counterclaims, May 25, 2021, Docket No. 12.)  On November 8, 2021, State Farm filed a Motion for Judgment on the Pleadings.  (Mot. J. Pleadings, Nov. 8, 2021, Docket No. 45.)[4]

---

[4] Labine argues that this Motion is now moot because Gerrard amended the Underlying Complaint while the Motion was pending. (Ltr. Dist. J., May 27, 2022, Docket No. 68.) Specifically, Labine asserts that the removal of the Defamation claim and addition of a Negligence claim "dramatically impacts Plaintiff's coverage analysis and obligations—and by extension the motion pending before the Court." (*Id.*) The Court does not agree.  First, Labine claims that the Operative Complaint has changed, mooting the Motion.  The Operative Complaint, however, is not the Underlying Complaint but is in fact the complaint filed by State Farm against Labine in this action.  State Farm has not indicated that it would amend its Complaint in light of Gerrard's Amended Underlying Complaint.  Second, Labine argues that the removal of the Defamation claim, and addition of the Negligence claim dramatically alters the question of coverage.  As it relates to the PLUP, this may be true.  Labine is free to amend his counterclaims accordingly.  But it does not alter the analysis as it pertains to the Homeowner's Policy.  The facts alleged in the Amended

5

**DISCUSSION**

I. **STANDARD OF REVIEW**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The Court analyzes a motion for judgment on the pleadings under the same standards as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009.)  The Court "accept[s] as true all facts pleaded by the non-moving party and grant[s] all reasonable inferences from the pleadings in favor of the non-moving party." *Syverson v. FirePond, Inc.,* 383 F.3d 745, 749 (8th Cir. 2004).  "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006).

Under the Declaratory Judgment Act, federal courts may declare the rights and other legal relations of interested parties when an actual controversy exists.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  A court's declaration has the force and effect of a final judgment.  28 U.S.C. § 2201(a).

II. **ANALYSIS**

---

Underlying Complaint remain unchanged such that the addition of the Negligence claim does not require different considerations.  Furthermore, the parties have both briefed the impact of that new claim on the Motion and the Court has fully considered those arguments in this Order.  As such, the Court finds the Motion for Judgment on the Pleadings is not moot.

An insurer has both the duty to defend and the duty to indemnify its insured. *St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mut. Ins. Co.*, 496 N.W.2d 411, 415 (Minn. Ct. App. 1993). The duty to defend is broader than the duty to indemnify. *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 415 (Minn. 1997). Generally, when determining the existence of that duty, the court compares the allegations in the underlying complaint with the relevant insurance policy language. *Id.* Whether an insurer has a legal duty to defend or indemnify is a legal question. *Metro. Prop. & Cas. Ins. Co. & Affiliates v. Miller*, 589 N.W.2d 297, 299 (Minn. 1999). The Court may relieve the insurer of a duty to defend and indemnify when it can be concluded as a matter of law that there is no basis upon which the insured is covered under the policy. *Woida v. North Star Mut. Ins. Co.*, 306 N.W.2d 570, 574 (Minn. 1981).

A person claiming coverage under the terms of an insurance policy has the burden to establish that coverage exists. *Boedigheimer v. Taylor*, 178 N.W.2d 610, 614 (Minn. 1970). If the insured meets that burden, the burden then shifts to the insurer to prove that a policy exclusion applies. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn. 1989). "If a complaint alleges several claims, and *any one* of them would require the insurer to indemnify, the insurer must provide a defense against all claims." *Reinsurance Ass'n of Minn. v. Timmer*, 641 N.W.2d 302, 307 (Minn. Ct. App. 2002) (citing *Franklin v. W. Nat'l Mut. Ins. Co.*, 574 N.W.2d 405, 406–07 (Minn. 1998)).

**A. Reservation of Rights**

"When an insurer has a duty to defend a liability claim for which it questions coverage, the insurer must expressly inform its insured that it accepts defense of the claim subject to its right to later contest coverage . . . . An insurer that fails to make such a reservation of rights is estopped from later denying coverage of the claim[.]" *Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 616 (Minn. 2012) (citations omitted). There is no dispute between the parties that State Farm properly reserved its rights to challenge coverage under the Homeowner's Policy. The parties do contest, however, whether State Farm reserved its rights to challenge coverage under the PLUP.

The assumption of defense estoppel is a narrow rule and applies only when the insurer "with full knowledge of the facts of a claim, defends its insured without reserving its right to contest coverage[.]" *Minn. Com. Ry. Co. v. Gen. Star. Indem. Co.*, 328 F. Supp. 2d 1024, 1027 (D. Minn. 2004) (quoting *Mutual Serv. Casualty Ins. Co. v. Luetmer*, 474 N.W.2d 365, 368 (Minn. Ct. App. 1991)). Furthermore, "absent prejudice to the insured, a late reservation of rights will not result in a waiver of the insurer's right to assert a policy exclusion." *Nw. Airlines Inc. v. Fed. Ins. Co.*, 32 F.3d 349, 356 (8th Cir. 1994) (citing *St. Paul Sch. Dist. v. Columbia Transit Corp.*, 321 N.W.2d 41, 47 (Minn. 1982)).

The issue here centers on the way in which the relationship between the parties played out. There was an apparent reservation of rights in June 2020 under the PLUP. (Pham Aff., Ex. 1.) State Farm then sent a letter on January 18, 2021, to LaBine which claimed State Farm had "completed [its] coverage investigation" and had determined that

8

"a defense can be provided under the policy." (Janochoski Decl., Ex. A.) State Farm made no mention of a continued reservation of rights in that letter. State Farm then followed that letter with another one on February 11, 2021, which explicitly stated State Farm reserved its rights to challenge coverage. (Pham Aff., Ex. 2.)

The case law is not entirely instructive as the Court nor the parties were able to point to any case which involves a scenario where an insurer reserved its rights, then accepted coverage with no reservation of rights, and then later issued another reservation of rights letter. Rather, the case law discusses only what occurs when an insured accepts coverage and then provides a late reservation of rights. The unique sequence of facts here certainly creates a factual dispute as to whether State Farm reserved its right to contest coverage under the PLUP such that the Court cannot rule on the issue as a matter of law. State Farm could potentially be liable for coverage under the PLUP simply because it did not reserve its rights to contest coverage, thus, there is a basis under which State Farm may be required to insure LaBine. The main question is what State Farm intended with its communications—for example, did the January 2021 letter intend to communicate that State Farm no longer reserved those rights under the PLUP. The Court cannot answer this or any other pertinent question based on the record before it now. Thus, the Court will deny State Farm's Motion for Judgment on the Pleadings as

to coverage under the PLUP and the question of whether State Farm must provide coverage to LaBine under the PLUP shall proceed to discovery.[5]

### B. Homeowner's Policy

LaBine bears the initial burden of establishing that there is a prima facie case of coverage. *Boedignheimer*, 178 N.W.2d at 614. State Farm claims that LaBine has failed to make such a showing under the Homeowner's Policy because there was no "occurrence" as defined therein. An "occurrence" is defined by the Homeowner's Policy as an accident. (Homeowner's Policy, at SF000031–32.) State Farm argues that since LaBine's alleged actions were intentional, not accidental, the policy cannot be extended.

Under Minnesota law, an accident is understood as "an unexpected happening without intention or design." *Weis v. State Farm Mut. Auto. Ins. Co.*, 64 N.W.2d 366, 368 (Minn. 1954). An occurrence has been defined as "an unexpected, unforeseen, or undesigned happening or consequence[.]" *Hauenstein v. St. Paul-Mercury Indem. Co.*, 65 N.W.2d 122, 126 (Minn. 1954). Expected has been defined as denoting "that the actor knew or should have known that there was a substantial probability that certain consequences will result from his actions." *Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386, 1391 (8th Cir. 1996) (quotation omitted).

---

[5] If State Farm is found to have reserved its right to contest coverage, questions remain as to whether State Farm has a duty to indemnify and defend under the PLUP. Several issues were identified by the parties that pertain to the definition of "occurrence", whether LaBine's actions fall under an exclusion, and what affect the addition of a negligence claim may have on State Farm's duty. The Court takes no position, in this Order, on the merits of those arguments.

If there was an intent to injure, then the action cannot be categorized as accidental. A court can infer the intent to injure as a matter of law[6] "when the insured acted in a calculated and remorseless manner or when the insured's actions were such that the insured knew or should have known that a harm was substantially certain to result from the insured's conduct." *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 613 (Minn. 2001). "[S]exual assaults . . . surely cannot be characterized as 'accidents' and they clearly come within the intentional act exclusion of the policy." *Allstate Ins. Co. v. S.F.*, 518 N.W.2d 37, 40 (Minn. 1994). "Where there is no intent to injure, the incident is an accident, even if the conduct itself was intentional." *Walser*, 628 N.W.2d at 612.

LaBine claims that both *Gruetzmacher v. Acuity* and *Walser*, where the courts found the insured did not have the intent to injure, are instructive case law as the facts in those cases are similar to the facts here. 393 F. Supp. 2d 860 (D. Minn. 2005); 628 N.W.2d 605. The Court does not agree. In *Gruetzmacher*, the court found that there was no intent to injure when an individual wrote a letter to an employer regarding one of their employees. 393 F. Supp. 2d at 866. The underlying claim in *Gruetzmacher* was for tortious interference, and the court found that there was no intent to injure because the allegation related to the writing of a letter, not to any allegation of an intent to cause

---

[6] The intent to injure is distinct from intent in general. Intent usually is a question of fact for a jury. *In re Phillips*, 882 F.2d 302, 305 (8th Cir. 1989 ). However, Minnesota courts have been clear that, in determining the extent of an insurer's duty to defend and indemnify, the Court can infer an intent to injure as a matter of law under certain enumerated circumstances discussed herein.

11

bodily injury.  *Id.*  And in *Walser*, the court held it would not infer an intent to injure because the injury happened as a result of teenage boys "goofing around" and there was no evidence of hostility between the boys.  628 N.W.2d at 607, 613–14.

Here, the Underlying Complaint involves alleged assault and non-consensual sexual misconduct.  While true that an intent to act does not amount to an intent to harm and therefore could still fall under the provisions of insurance coverage, the Court will infer an intent to injure here.  Granting all reasonable inferences in LaBine's favor, the alleged facts in the Underlying Complaint remain the same.  LaBine bit Gerrard twice, injected her with a syringe, showed her pornographic images, and chased and grabbed her.  None of his actions were consensual.  Had Gerrard not fought back, it is likely that LaBine would have hurt Gerrard even further.  Arguably, LaBine wanted to cause Gerrard harm, but at the very least he knew or should have known that his actions would cause harm.  Non-consensual sexual conduct is not an accident.  The fact that LaBine stated he wanted to marry Gerrard or run away to Peru with her is irrelevant.  His actions are the most important indicators of his intent to injure.  These actions showed he intended to cause Gerrard some sort of injury or should have known his actions would cause harm.  Addition of claims for Negligence and Negligent Infliction of Emotional Distress do not alter the Court's conclusion because the facts supporting those claims are identical to the intentional acts described above.

The Court holds, as a matter of law, that the bodily injury that resulted from LaBine's alleged actions occurred as a result of LaBine's intent to injure and did not result from an accident. As such, no bodily injury was caused by an "occurrence," and State Farm has no duty to defend or indemnify LaBine in the Underlying Action under the Homeowner's Policy.[7] The Court will, therefore, grant State Farm's Motion for Judgment on the Pleadings as it pertains to the Homeowner's Policy and hold that State Farm owes no duty to Labine under this policy.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the Plaintiff's Motion for Judgment on the Pleadings [Docket No. 45] is **GRANTED in part and DENIED in part** as follows:

1. The Motion is **DENIED** as it relates to a duty to defend and indemnify under the Personal Liability Umbrella Policy; and

2. The Motion is **GRANTED** as it relates to a duty to defend and indemnify under the Homeowner's Policy.

DATED: September 7, 2022  
at Minneapolis, Minnesota.

_____  
JOHN R. TUNHEIM  
United States District Judge

---

[7] State Farm raised several other arguments as to why it was not required to indemnify or defend Labine under the Homeowner's Policy. The Court need not reach those arguments in this Order as State Farm has no duty to defend or indemnify as a result of Labine's intentional acts.